UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| APRIL HAHS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:17-CV-01519-NCC |
| NANCY A. BERRYHILL, Deputy Commissioner of Operations, Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of April Hahs ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 16), and Defendant has filed a brief in support of the Answer (Doc. 23). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 13).

### I. PROCEDURAL HISTORY

Plaintiff filed her applications for SSI and DIB on November 25, 2013 and January 7, 2014, respectively (Tr. 148-61). Plaintiff was initially denied on February 18, 2014, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 79-92, 100-04). After a hearing, by decision dated March 16, 2016, the ALJ found Plaintiff not disabled (Tr. 17-37). On March 20, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016 and that Plaintiff has not engaged in substantial gainful activity since August 20, 2013, the alleged onset date (Tr. 22). The ALJ determined Plaintiff has the severe impairments of spinal disorders, affective disorders, and anxiety disorders, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22-23).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[1] with the following limitations (Tr. 26). She must alternate between sitting and standing at 30-minute intervals throughout the work shift (*Id.*). She cannot climb ladders, ropes or scaffolds (*Id.*). She may only occasionally climb ramps and stairs or stoop, kneel, crouch, or crawl (*Id.*). She must avoid exposure to extreme cold (*Id.*). She is also limited to simple, routine, repetitive tasks in a work environment free of fast-paced production requirements involving only simple work related decisions with few, if any, workplace changes (*Id.*). She may only have occasional interaction with the general public and coworkers (*Id.*). The ALJ found Plaintiff unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including a surveillance system monitor, a hand packer, or a production worker (Tr. 31-32).

---

[1] Sedentary work:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 33). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to

establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to

4

support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ failed to properly consider "some" medical evidence under the standards contained in *Singh v. Apfel,* 222 F.3d 448 (8th Cir. 2000) and *Lauer v. Apfel,* 245 F.3d 700 (8th Cir. 2001) (Doc. 16 at 4). Second, Plaintiff argues that the vocational expert's response to the ALJ's hypothetical question does not represent substantial evidence because the hypothetical

5

does not capture the concrete consequence of Plaintiff's impairment (*Id.*). For the following reasons, the Court finds that Plaintiff's argument is without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer*, 245 F.3d at 703. "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical

question, some medical evidence must support the determination of the claimant's RFC.");
*Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ found that Plaintiff has the RFC to perform sedentary work with the following limitations (Tr. 26). She must alternate between sitting and standing at 30-minute intervals throughout the work shift (*Id.*). She cannot climb ladders, ropes or scaffolds (*Id.*). She may only occasionally climb ramps and stairs or stoop, kneel, crouch, or crawl (*Id.*). She must avoid exposure to extreme cold (*Id.*). She is also limited to simple, routine, repetitive tasks in a work environment free of fast-paced production requirements involving only simple work related decisions with few, if any, workplace changes (*Id.*). She may only have occasional interaction with the general public and coworkers (*Id.*). Although Plaintiff asserts that the ALJ failed to support his residual functional capacity determination with "some" medical evidence as required under the standards in *Singh*, 222 F.3d 448, and *Lauer*, 245 F.3d 700, the Court finds the ALJ's RFC determination was based on substantial evidence.

First, the Court will consider the ALJ's evaluation of the consistency of Plaintiff's subjective complaints as the ALJ's review was essential to the ALJ's determination of other issues, including Plaintiff's RFC.[2] *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); 416.945 (2010)). In evaluating a claimant's subjective complaints, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage,

---

[2] As noted by Defendant, Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

7

effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's [] determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of his determination regarding the consistency of Plaintiff's subjective complaints are based on substantial evidence.

The ALJ reviewed the objective medical evidence of record and determined that it failed to support the severity of Plaintiff's alleged symptoms (Tr. 27-31). Specifically, after detailing the limited medical record, the ALJ highlighted that Plaintiff primarily received treatment for her mental health impairments from her primary care physician who prescribed medication (Tr. 30). *See Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) (holding that the failure to seek mental treatment is a relevant consideration when evaluating a claimant's mental impairment); *Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007) (affirming ALJ's finding that claimant did not suffer significant impairment due to psychiatric illness when claimant had never had any formal treatment by psychiatrist, psychologist, or other mental health professional on a long-term basis); *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (affirming the ALJ's conclusion that mental impairments were not disabling when there was no evidence "of ongoing counseling of psychiatric treatment or of deterioration of change in [claimant's] mental capabilities"). Indeed,

8

as noted by the ALJ, Plaintiff's sole visit with a psychiatrist, Dr. Gautam Rohatgi, D.O. ("Dr. Rohatgi"), occurred on April 4, 2014, and appears to have been motivated by Plaintiff's application for disability benefits (Tr. 30, 263-66). For example, Dr. Rohatgi notes, "[t]he patient discussed extensively about would this interviewer be able to help her with disability. The patient discussed her lawyer as well" (Tr. 263).

Regardless, upon review of the medical record available in this area, as indicated by the ALJ, the Court finds that the clinical findings from Plaintiff's mental health examinations were largely normal (Tr. 26-27, 29-30). Dr. Rohatgi diagnosed Plaintiff with Depression, NOS[3] and Anxiety disorder, NOS (Tr. 265). He indicated that while Plaintiff's mood was anxious and depressed and her affect was overwhelmed, her perceptions were without hallucinations, illusions, derealizations, or depersonalizations, her insight and judgment were fair, she was alert and oriented in three spheres, she was cooperative, her speech was fluent, clear, and her thought process was linear (Tr. 265). Accordingly, Dr. Rohatgi assigned Plaintiff a GAF score of 55,[4] updated her medication, recommended psychotherapy, and told Plaintiff to follow up in two weeks (Tr. 265-66). However, in September of 2014, Dr. Rohatgi's office discharged Plaintiff because she dropped out of service; "[Plaintiff] has not scheduled and attended a psychiatric appointment with Dr. Rohatgi since 4/14/14" (Tr. 262). As addressed in more detail below, the

---

[3] Not Otherwise Specified.

[4] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32.

9

report from Plaintiff's consultative examination likewise indicated largely normal findings (Tr. 303-07).

As for Plaintiff's physical impairments, the ALJ similarly found, and the record reflects, largely normal clinical findings (Tr. 27, 29-30). For example, when Plaintiff presented to Dr. David L. Super, D.O. ("Dr. Super"), her obstetrician-gynecologist, in May of 2014, Dr. Super noted normal range of motion in Plaintiff's back and full range of motion without pain upon review of Plaintiff's musculoskeletal system (Tr. 271-72). Further, the diagnostic testing of record also revealed only minimal findings. As noted by the ALJ, an MRI of the thoracic spine on November 12, 2015, was "unremarkable" (Tr. 30, 298-300). An MRI of the cervical spine taken that same day indicated some minimal disc bulges at C5-C6 and C6-C7 and mildly narrowed neural foramen at C3-C4 but was otherwise normal (Tr. 300). Further, while an x-ray of the cervical spine on October 28, 2014 indicated a loss of the normal cervical lordosis, the reading radiologist determined that this was a "nonspecific finding which may be secondary to muscle spasm or patient positioning" and indicated that: "no prevertebral soft tissue swelling is seen;" "there is no significant osteoarthritic change;" "no remote fracture deformity is seen;" and "facet joints are in normal alignment on oblique projections" (Tr. 278). Similarly, an x-ray of Plaintiff's thoracic spine taken that same day indicated no fracture or malalignment (Tr. 279).

The ALJ also found that Plaintiff described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations (Tr. 30). For example, Plaintiff testified that she cares for three of her four children, including a three-year-old, for whom she bathes, feeds, and dresses (Tr. 30, 59-61, 203). *See Jones v. Astrue*, 619 F.3d 963, 975 (8th Cir. 2010). Plaintiff also reported that she shops for groceries; does laundry and housework; is able to drive herself places; watches television daily; and talks on the phone

(Tr. 30, 65, 204-06). The consultative examiner also indicated that Plaintiff would not have any impairment in the area of activities of daily living (Tr. 306). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility.").

Accordingly, the Court finds that the ALJ gave good reasons for finding Plaintiff's allegations regarding the severity of her conditions not fully credible, and that the ALJ's analysis was carefully linked to the evidence of record. See *Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006) ("If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment.") (internal quotation marks and citation omitted). As such, the Court further finds that the ALJ's evaluation of the consistency of Plaintiff's subjective complaints is based on substantial evidence and is consistent with the Regulations and case law.

Second, the ALJ addressed the medical opinion evidence of record. Specifically, the ALJ considered the opinion of Dr. Josephine Hyde, Psy.D. ("Dr. Hyde"), psychologist and consultative examiner (Tr. 31, 308-10). On December 15, 2015, Dr. Hyde completed a medical source statement after a consultative examination of Plaintiff (Tr. 303-07). In her opinion, Dr. Hyde found marked and extreme limitations in almost all areas including Plaintiff's ability to carry out simple instructions; the ability to make judgments on simple work-related decision; the ability to understand and carry out complex instructions; the ability to make judgments on complex work-related decisions; the ability to interact appropriately with the public, supervisors, and co-workers; and the ability to respond appropriately to usual work situations and to changes in a routine work setting (Tr. 308-10). The ALJ afforded Dr. Hyde's opinion "little weight" for

11

several reasons. The ALJ first found the opinion to be inconsistent with the Plaintiff's limited and conservative treatment history (Tr. 31). *Krogmeier*, 294 F.3d at 1023. *See also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion"). Specifically, the ALJ noted that Plaintiff has received her mental health treatment primarily through her primary care physician (Tr. 31). The ALJ also indicated that Plaintiff has had Medicaid for several years and "could have availed herself of more extensive treatment" (Tr. 31, 68-69, 73).

The ALJ then determined the opinion to be internally inconsistent with Dr. Hyde's findings from the exam and written report (Tr. 31). Indeed, as noted by the ALJ, Dr. Hyde reported that Plaintiff answered all questions posed; interacted comfortably with the examiner; showed good interpersonal skills such as listening and asking relevant questions; was alert and oriented to person, place, situation, and time; interpreted provers abstractly; had an intact memory; and recalled material from the beginning of the interview near the end of the interview (Tr. 31, 305-07). An ALJ may discount a medical opinion that is inconsistent with the source's own treatment notes. *Milam*, 794 F.3d at 983; *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008).

The ALJ further found Dr. Hyde's opinion to be inconsistent with the Plaintiff's ability to function at the hearing (Tr. 31). Specifically, the ALJ noted that Plaintiff appeared to function reasonably well at the hearing and did not demonstrate the severity of limitation assigned on the MSS form (*Id.*). The ALJ's personal observations of Plaintiff's demeanor and ability to function during the hearing are a proper consideration. *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); *Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The

ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations").

The ALJ also found the opinion to be inconsistent with the treatment notes from Dr. Rohatgi (Tr. 31). As addressed in more detail above, while Dr. Rohatgi indicated that Plaintiff's mood was anxious and depressed, he found Plaintiff to be moderately impaired—he assigned Plaintiff a GAF score of 55—and otherwise noted relatively normal findings (Tr. 265-66). The ALJ specifically highlighted Dr. Rohatgi's clinical findings that Plaintiff was cooperative, had mild psychomotor agitation, had fluent and clear speech and a linear thought process (Tr. 31, 265).

To the extent Plaintiff asserts that there is not a medical opinion that supports the RFC determination (Doc. 16 at 10), there is no requirement that an RFC determination be supported by a specific medical opinion or that an RFC must be linked in each of its components to a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Therefore, the Court finds that the ALJ properly considered the medical opinion evidence of record.

Third, the ALJ also properly evaluated the Plaintiff's GAF scores (Tr. 29). On April 4, 2014, Dr. Rohatgi assigned Plaintiff a GAF score of 55 (Tr. 265) and on December 15, 2015, Dr. Hyde assigned Plaintiff a GAF score of 58 (Tr. 307). Specifically, the ALJ found the GAF score assigned by Dr. Rohatgi to be consistent with the treatment record in light of its indication of moderate symptoms and limitations (Tr. 29). Although the ALJ did not specifically address Dr. Hyde's GAF score, as detailed above, the ALJ properly reviewed Dr. Hyde's opinion and associated report (Tr. 26-29, 31). Regardless, GAF scores of 51 to 60 indicate only a moderate limitation in Plaintiff's ability to function and such a limitation in Plaintiff's non-exertional

limitations is readily apparent in the ALJ's restriction of Plaintiff in the RFC to only simple, routine, repetitive tasks in a work environment free of fast-paced production requirements involving only simple work related decisions with few, if any workplace changes; and only occasional interaction with the general public and coworkers (Tr. 26).

Accordingly, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, and diagnostic test results, as well as Plaintiff's credible limitations; and that the ALJ's RFC determination is based on substantial evidence.

Finally, Plaintiff asserts that the hypothetical question to the vocational expert does not capture the concrete consequences of the Plaintiff's condition and, therefore, the response of the vocational expert does not represent substantial evidence. Specifically, Plaintiff argues that because the restrictions contained in the RFC are not supported by the evidence of record, the hypothetical question posed is consequently flawed and the vocational expert's response does not represent substantial evidence. However, as previously addressed, the Court finds the ALJ's RFC determination to be consistent with the relevant evidence of record. Accordingly, as the ALJ appropriately included the restrictions as indicated in his RFC determination in the hypothetical question to the vocational expert, the Court finds that the hypothetical which the ALJ submitted to the vocational expert was proper, the ALJ properly relied on the vocational expert's testimony that there were jobs existing in significant numbers which Plaintiff could perform, and Plaintiff's arguments to the contrary are without merit (*See* Tr. 73-77). *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ.").

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 5th day of September, 2018.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE